UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| In re<br><br>NORANDA ALUMINUM, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 16-10083-399<br>Jointly Administered<br>Honorable Barry S. Schermer |
| CENTURY ALUMINUM COMPANY<br><br>Plaintiff,<br><br>v.<br><br>GRAMERCY ALUMINA HOLDINGS, INC.,<br><br>Defendant. | Adv. Pro. No. 16-01005 |

CENTURY ALUMINUM COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION

Century Aluminum Company ("Century") submits this memorandum of law in support of its Motion for Summary Judgment (the "Motion"),[2] and seeks a judgment declaring that it is not stayed or enjoined from exercising its Termination and Setoff Rights under the Noranda Contract. Specifically, Century requests that this Court enter summary judgment and declare that, pursuant to sections 362(b)(6), 362(b)(17), 556 and 560 of the Bankruptcy Code, Century is not stayed or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and state of incorporation, are: Noranda Aluminum, Inc. (Del.; 5285), Gramercy Alumina Holdings Inc. (Del.; 1941), Gramercy Alumina Holdings II, Inc. (Del.; 2806), NHB Capital, LLC (Del.; 0777), Noranda Alumina LLC (Del.; 4769), Noranda Aluminum Acquisition Corp. (Del.; 8458), Noranda Aluminum Holding Corp. (Del.; 8550), Noranda Bauxite Ltd. (Jamaica), Noranda Bauxite Holdings Ltd. (St. Lucia), Noranda Intermediate Holding Corp. (Del.; 3238) and Norandal USA, Inc. (Del.; 6477). The address of the Debtors' corporate headquarters is 801 Crescent Centre Drive, Suite 600, Franklin, Tennessee 37067.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

NAI-1500869174v8

limited in any way from exercising its Termination and Setoff Rights under the Noranda Contract. No material facts are in dispute with respect to this matter and Century is entitled to summary judgment as a matter of law.

## II.    CENTURY'S URGENT NEED TO EXERCISE ITS TERMINATION RIGHTS

Century has an urgent need to exercise its Termination and Setoff Rights. Gary Declaration at ¶ 14. Gramercy's bankruptcy filing has upended the hedge built into the Noranda Contract thereby depriving Century of the benefit of its bargain. Id. Because the price of aluminum has recently performed better than the price of alumina, Century is currently paying and Noranda is receiving an above market price for the alumina under the LME Pricing Convention used in the Noranda Contract. Id. Were the market price of alumina to rise or the market price of aluminum to fall, however, so that the price of alumina under the Noranda Contract becomes lower than the market price of alumina, Noranda will presumably reject the Noranda Contract (or may reject the contract due to other developments in its chapter 11 case) eliminating the benefit of the hedge, which is to mitigate the impact of alumina and aluminum price fluctuations on Century's operations. Id. Century should be permitted to terminate the Noranda Contract as soon as possible so that it can properly protect its business by hedging its pricing risk through a forward contract with a party that is obligated and has the ability to perform the contract. Id.

## III.    ARGUMENT

### A.    Standard of Review

A party may "move for summary judgment at any time, even as early as the commencement of the action." Fed. R. Civ. P. 56, 2009 Advisory Committee Notes; see also Jernigan v. Crane, 64 F. Supp. 3d 1260, 1273 (E.D. Ark. 2014) (same); Fed. R. Civ. P. 56(b); cf. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 874 (8th Cir. 2011) (internal quotation marks and citation omitted). The moving party has the burden to establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

      **B.**      **Termination and Setoff Rights in the Noranda Contract**

As further discussed below, sections 556 and 560 of the Bankruptcy Code allow counterparties to terminate forward contracts and swap agreements "because of a condition of the kind specified in section 365(e)(1) of this title." 11 U.S.C. §§ 556, 560. The conditions included in section 365(e)(1) of the Bankruptcy Code include rights to terminate conditioned upon "the insolvency or financial condition of the debtor at any time before the closing of the case" and "the commencement of a case under this title." Id. at § 365(e)(1). Paragraph 25.1(d) of the Noranda Contract provides that it is an Event of Default if a counterparty "files a petition or otherwise commences, authorizes or acquiesces in the commencement of a proceeding or cause of action under any bankruptcy or similar law for the protection of creditors" or "is unable to pay its debts as they fall due." Gary Declaration, ¶ 11. Because Noranda has filed for bankruptcy, an Event of Default exists under the Noranda Contract. Therefore, if Century otherwise qualifies for the forward contract and/or swap agreement exceptions, it is not stayed or limited in any way from exercising its Termination Rights under the Noranda Contract.

Similarly, sections 362(b)(6) and 362(b)(17) allow counterparties to "offset or net out any termination value, payment amount, or other transfer obligation" arising under forward contracts or swap agreements. 11 U.S.C. §§ 362(b)(6), 362(b)(17). Paragraph 25.4 of the Noranda Contract provides that, in the event of a default or early termination, the non-defaulting party

may setoff any or all amounts which the defaulting party owes to the non-defaulting party. Gary Declaration, ¶ 13. Because Noranda has filed for bankruptcy, an Event of Default exists under the Noranda Contract. Therefore, if Century otherwise qualifies for the forward contract and/or swap agreement exceptions, it is not stayed or limited in any way from exercising its Setoff Rights under the Noranda Contract.

### C.     Forward Contract Merchant Exceptions

15.     With respect to the exercise of termination rights, section 556 of the Bankruptcy Code provides that:

> The contractual right of a . . . forward contract merchant to cause the liquidation, termination, or acceleration of a . . . forward contract because of a condition of the kind specified in section 365(e)(1) of this title, and the right to a variation or maintenance margin payment received from a trustee with respect to . . . forward contracts, shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by the order or a court in any proceeding under this title . . . .

Id. at § 556.

Similarly, with regard to the exercise of setoff rights, section 362(b)(6) of the Bankruptcy Code provides that:

> (b)     The filing of a petition . . . does not operate as a stay—
>
> (6)     under subsection (a) of this section, of the exercise by a . . . forward contract merchant . . . of any contractual right . . . to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more [forward] contracts . . . .

11 U.S.C. § 362(b)(6).

Accordingly, Century can avail itself of the exceptions in sections 556 and 362(b)(6) if: (1) the Noranda Contract is a forward contract and (2) Century is a forward contract merchant.

### 1.     The Noranda Contract Is a Forward Contract

Under section 101(25) of the Bankruptcy Code, a forward contract is defined as:

NAI-1500869174v8                                  4

> a contract (other than a commodity contract as defined in section 761) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade . . . with a maturity date more than two days after the date the contract is entered into . . . .

Id. at § 101(25).

Therefore, the statutory elements of a forward contract are that it must: (a) be a contract for the sale of a commodity or any similar good which is or becomes the subject of dealing in the forward contract trade; (b) not be a commodity contract; and (c) have a maturity date more than two days after the parties' entry into the contract.

### a. The Noranda Contract involves the sale of a commodity or a good that is the subject of dealing in the forward contract trade.

The term "commodity" in the Bankruptcy Code's definition of forward contract is defined by section 761(8) of the Bankruptcy Code, which in turn states that the term "commodity" has the meaning set forth in the Commodity Exchange Act. Commodities, for the purposes of the Commodity Exchange Act, are all "goods and articles . . . in which contracts for future delivery are presently or in the future dealt in." 7 U.S.C. § 1a(9). Alumina is customarily traded through contracts that provide for future delivery. See Gary Declaration, ¶ 9.

As well, alumina is commonly regarded in the industry as a commodity. Id. Generally, contracts for commodities are distinguished from supply contracts on the basis that the price of commodities fluctuate depending upon the market price for the good, rather than the costs attributable to factors such as packaging, marketing and transportation. See In re National Gas Distributors, LLC v. E.I du Pont de Nemours and Co., Inc. (In re National Gas Dist., LLC), 556 F.3d 247, 259 (4th Cir. 2009). Because the price of alumina typically fluctuates according to its market price, alumina is a commodity for this reason as well. Gary Declaration, ¶ 10.

Further, although the Bankruptcy Code does not define the meaning of the term "forward contract trade," the plain meaning is that a good will qualify if it is common for entities to enter into forward contracts for the sale of alumina. See Clear Peak Energy, Inc. v. S. Cal. Edison Co. (In re Clear Peak Energy, Inc.), 488 B.R. 647, 658 (Bankr. D. Ariz. 2013) (finding that it is the "customary course of action" for utilities to enter into contracts for the future delivery of electricity, and therefore electricity is a good that is the "subject of dealing in the forward contract trade"). It is common for alumina to be bought and sold through forward contracts. See Gary Declaration, ¶ 9. Therefore, alumina is also a good that is "the subject of dealing in the forward contract trade." See 11 U.S.C. § 101(25).

### b. The Noranda Contract is not a commodity contract.

Section 761 of the Bankruptcy Code contains a number of definitions for a "commodity contract," but courts generally agree that the difference between commodity contracts and forward contracts are that commodity contracts are subject to the rules of a contract market or board of trade. See Williams v. Morgan Stanley Capital Grp. Inc. (In re Olympic Nat. Gas Co.), 294 F.3d 737, 741 (5th Cir. 2002); BCP Liquidating LLC v. Bridgeline Gas Mktg., LLC (In re Borden Chemicals & Plastics Operating Ltd. P'ship), 336 B.R. 214, 218 (Bankr. D. Del. 2006). Further, "one of the distinguishing characteristics of a forward contract is that the parties expect to make actual delivery." In re Olympic, 294 F.3d at 741. The Noranda Contract is not exchange-traded and involves the physical delivery of alumina. Gary Declaration, ¶ 10. Therefore, the Noranda Contract is not a commodity contract.

### c. The Noranda Contract has a maturity date more than two days after entry.

"Maturity date" is not defined in the Bankruptcy Code. However, most courts define the maturity date as the time at which the underlying commodity is to be delivered and payment is

due. See U.S. Bank Nat'l Ass'n v. Plains Mktg. Canada LP (In re Renew Energy LLC), 463 B.R. 475, 481 (Bankr. W.D. Wis. 2011); In re Borden, 336 B.R. at 219. Because the Noranda Contract provides for regular shipments of alumina over a four-year period, it has a maturity date more than two days after entry. See Gary Declaration, ¶ 7.

### d. Although some courts have imposed requirements in addition to those contained in section 556 of the Bankruptcy Code, the Noranda Contract meets those as well.

It is a fundamental rule of statutory construction that courts, in applying a statute, should rely on that statute's plain language and not look beyond it. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (If a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal citations omitted); Lightfoot v. MXEnergy Electic Inc. (In re MBS Management Services, Inc.), 690 F.3d 352, 356 (5th Cir. 2012) (rejecting proposed additional requirements for section 556 as beyond the strict language of the Bankruptcy Code and stating that "we rely on the statutory language alone"). Notwithstanding this principle and the clear language of section 556 of the Bankruptcy Code, certain courts have in fact imposed additional requirements, including that a forward contract must include fixed terms regarding quantity, price and duration. See Clear Peak Energy, Inc., 488 B.R. at 658 (citing In re National Gas Distributors, LLC v. E.I du Pont de Nemours and Co., Inc. (In re National Gas Dist., LLC), 556 F.3d 247, 260 (4th Cir. 2009)). Although no court in the Eight Circuit appears to have addressed whether the imposition of additional requirements is appropriate, the Noranda Contract nonetheless meets these potential added requirements because it (a) includes the amount of the alumina to be purchased and the term of the contract and (b) contains a formula for calculating the price of alumina on a yearly basis as well as a minimum "floor price" for the

alumina purchased under the contract. See Gary Declaration, ¶ 7. Therefore, to the extent necessary, Century meets the additional requirements imposed by certain courts.

Further, the Clear Peak court, based on an examination of legislative history, also found that forward contracts must have a "relationship to the financial markets." See Clear Peak Energy, Inc., 488 B.R. at 658. However, courts have found that this test is met if a contract is intended, at least in part, to protect against fluctuations in price. See In re Borden, 336 B.R. at 221 (looking to the legislative history to conclude that "Congress intended to reach agreements whose purpose was to protect against the uncertainty of price fluctuations"); In re Clear Peak Energy, Inc., 488 B.R. at 659 (citing Borden Chemicals with approval). The Noranda Contract sets alumina prices for periods of one year, and the prices are set as a percentage of the London Metal Exchange price of aluminum, as opposed to the current market price of alumina (the "LME Pricing Convention"). See Gary Declaration, ¶ 7. The LME Pricing Convention acts as a hedge (or, in other words, protects Century) against fluctuations in the relative prices of aluminum and alumina. Id. at ¶ 8. If aluminum prices, which determine the extent of Century's revenue, decrease, the cost of alumina incurred by Century also decreases, potentially below the market price for alumina. Id. In contrast, if the price of aluminum and, correspondingly, Century's revenue rises, the cost of alumina also rises, potentially above the market price for alumina. Id. By its terms, therefore, the Noranda Contract protects Century against price fluctuations of alumina and aluminum. Id. Therefore, the Noranda Contract meets any applicable "relationship to the financial markets" test.[3]

---

[3] Of note, the Debtors have taken the position in the Sherwin Alumina Company, LLC ("Sherwin") bankruptcy case that a contract for the sale of bauxite between the Debtors and Sherwin (the "Bauxite Contract") qualifies as a forward contract under the Bankruptcy Code. See In re Sherwin Alumina Company, LLC, Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 12, 2016) [D.I. 54]. Sherwin has expressed the opposite view, arguing, among other things, that the Bauxite Contract does not have a fixed

## 2. Century Is a Forward Contract Merchant

Section 101(26) of the Bankruptcy Code defines a forward contract merchant as:

> an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity . . . or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.

11 U.S.C. § 101(26).

As noted above, if a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. at 6 (internal citations omitted). Under the plain language of the Bankruptcy Code, a party qualifies as a forward contract merchant if it has entered into forward contracts with the debtor. See In re Renew Energy LLC, 463 B.R. at 482 ("The Bankruptcy Code defines 'forward contract merchant' as 'an entity the business of which consists in whole or in part of entering into forward contracts.' Plains has demonstrated that it is a forward contract merchant by showing that Contracts 954 and 955 qualify as forward contracts. . . . No fact that could be elicited at trial would change the analysis above.") (citations omitted); see also In re Olympic Nat. Gas Co., 294 F.3d at 740 (concluding that a party was a forward contract merchant on the grounds that "it entered into a 'forward contract' with the debtor"). Similarly, a Delaware bankruptcy court concluded that

---

(continued...)

price, but instead is a contract for the sale of bauxite at the market price existing at the time of delivery. See In re Sherwin Alumina Company, LLC, Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 11, 2016) [D.I. 21]. If Sherwin is correct, the Bauxite Contract would not appear to contain fixed terms regarding price, nor would it appear to protect the parties from price fluctuations of bauxite. As a consequence, and again assuming that Sherwin is correct, any argument by the Debtors that the Noranda Contract is not a forward contract based on a failure to meet the fixed price or "relationship to the financial markets" factors would be inconsistent with its position in the Sherwin bankruptcy case. Indeed, as a general matter, it is hard to imagine how Noranda could argue that the section 556 forward contract exception is applicable to the Bauxite Contract but would not be applicable to the Noranda Contract.

"essentially any person that is in need of protection with respect to a forward contract in a business setting should be covered, except in the unusual instance of a forward contract between two nonmerchants who do not enter into forward contracts with merchants." In re Borden Chemicals & Plastics Operating Ltd. P'ship, 336 B.R. at 225.

However, despite the plain language of section 101(26) of the Bankruptcy Code, some other courts impose a more restrictive definition of forward contract merchant. For instance, in In re Mirant Corp., the bankruptcy court defined a forward contract merchant as "a person that, in order to profit, engages in the forward contract trade as a merchant or with merchants," with "merchant" being defined as "one that is not acting as either an end-user or a producer." In re Mirant Corp., 310 B.R. 548, 567-68 (Bankr. N.D. Tex. 2004).

Century qualifies as a forward contract merchant under all the authorities described above including the more restrictive standard in Mirant. First, under the reasoning of the Renew Energy court, a showing that Century has entered into a forward contract with Gramercy is sufficient to establish that Century is a forward contract merchant. See In re Renew Energy LLC, 463 B.R. at 482. Because the Noranda Contract is a forward contract, Century meets the Renew Energy definition.

Second, Century also meets the forward contract merchant requirement as interpreted by the court in Borden Chemicals. Through the Noranda Contract, Century has entered into a forward contract in the normal course of its business and in an attempt to protect itself from price fluctuations of alumina and aluminum. See id. at ¶¶ 4, 7, 8. As a consequence, Century is an entity "that is in need of protection with respect to a forward contract in a business setting" and therefore is a forward contract merchant. See In re Borden Chemicals & Plastics Operating Ltd. P'ship, 336 B.R. at 225.

Third, Century qualifies as a forward contract merchant under the more restrictive view of the Mirant court. Even though Century primarily acquires alumina for its own use, it also resells alumina to third parties. Gary Declaration, ¶ 5. Further, Century also enters into swaps, in which it trades a cargo of alumina with other consumers or traders for a separate cargo to be delivered earlier or later in the year. Id. As a consequence, Century is a "merchant" of alumina and not just an "end user," and therefore qualifies as "a person that, in order to profit, engages in the forward contract trade as a merchant or with merchants." In re Mirant Corp., 310 B.R. at 568.

Further, even if this Court finds that Century is not a "merchant" of alumina, Century also enters into forward contracts with Glencore for the sale of alumina. See Gary Declaration, ¶ 4. Glencore is a "merchant" under the Mirant court definition, as it is one of the largest traders of alumina and is not an end-user or producer of alumina. Id. Therefore, Century qualifies as a forward contract merchant as its business "consists . . . in part of entering into forward contracts . . . with merchants in a commodity." 11 U.S.C. § 101(26).

### D.   Swap Participant Exceptions

With respect to termination rights, section 560 of the Bankruptcy Code provides that:

> The exercise of any contractual right of any swap participant . . . to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title.

Id. at § 560.

Similarly, with regard to setoff rights, section 362(b)(17) of the Bankruptcy Code provides that:

> (b)   The filing of a petition . . . does not operate as a stay—
>
> > (17)   under subsection (a) of this section, of the exercise by a swap participant . . . of any contractual right . . . to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more [swap] agreements . . . .

11 U.S.C. § 362(b)(17).

Accordingly, Century's ability to avail itself of the exceptions in sections 560 and 362(b)(17) depends on whether: (1) the Noranda Contract is a swap agreement and (2) Century is a swap participant.

### 1.   The Noranda Contract Is a Swap Agreement

A swap agreement is defined in section 101(583B) of the Bankruptcy Code as, among other things, a "commodity forward agreement." Although the Bankruptcy Code does not define this term, the Fourth Circuit addressed it in the context of a supply contract between a producer and an end-user of natural gas. See In re National Gas Distributors, LLC, 556 F.3d at 250. In examining the meaning of the term "commodity forward agreement," the Fourth Circuit found that forward contracts are a subset of commodity forward agreements. Id. at 257. The court noted that Congress chose to separately use the terms "forward contract" and "forward agreement." Id. at 255. According to the court, "the term 'agreement,' although frequently used as synonymous with the word 'contract,' is really an expression of greater breadth of meaning and less technicality. Every contract is an agreement; but not every agreement is a contract." Id. (citations omitted). As a consequence, the court found that "[b]ecause the term 'agreement' is broader than the term 'contract,' . . . a forward *contract* must also be a forward *agreement* (although it does not follow that every forward agreement is a forward contract)." Id. at 256 (emphasis in original). Further, to provide some guidance to the bankruptcy court on remand, the Fourth Circuit identified four elements of a commodity forward agreement: (1) the subject of

a commodity forward agreement must be a commodity; (2) a forward commodity agreement, in being "forward," must require a payment for the commodity at a price fixed at the time of contracting for delivery more than two days after the date the contract is entered into; (3) the price, quantity and duration of the agreement must be fixed at the time of contracting; and (4) there must be a relationship between the agreement and the financial markets, but this relationship need not be defined by trading in a market or on an exchange. Id. at 259-60.

The Noranda Contract meets all four of the elements of commodity forward agreements identified by the Fourth Circuit in National Gas. As noted above, alumina is a commodity and the Noranda Contract provides that it will be delivered over a four-year period – easily meeting the two day restriction in National Gas. See Gary Declaration, ¶¶ 7, 9. Further, the Noranda Contract contains fixed terms regarding the price, quantity and duration of the agreement. Id., ¶ 7. Finally, by pricing alumina as a percentage of the price of aluminum, Century is protecting itself from decreases in the price of aluminum. Id. at ¶ 8. The Noranda Contract sets alumina prices for periods of one year, and the prices are set as a percentage of the London Metal Exchange price of aluminum as opposed to the current market price of alumina. Id. at ¶ 7. The LME Pricing Convention acts as a hedge (or, in other words, protects Century) against fluctuations in the relative prices of aluminum and alumina. Id. at ¶ 8. If aluminum prices decrease, the cost of alumina incurred by Century also decreases, potentially below the market price for alumina. Id. In contrast, if the price of aluminum rises, the cost of alumina also rises, potentially above the market price for alumina. Id. By its terms, therefore, the Noranda Contract protects Century against price fluctuations of alumina and aluminum. Because the Noranda Contract meets any applicable "relationship to the financial markets" test, it also constitutes a swap agreement.

### 2. Century Is a Swap Participant

The definition of a swap participant under the Bankruptcy Code is: "an entity that, at any time before the filing of the petition, has an outstanding swap agreement with the debtor." 11 U.S.C. § 101(53C); see also In re National Gas Dist., 556 F.3d at 253 (noting that the swap participant safe harbors protect all counterparties to swap agreements). As described above, the Noranda Contract is an outstanding swap agreement with Gramercy. Therefore, Century is a swap participant.

## IV. CONCLUSION

The undisputed facts demonstrate that the Noranda Contract is both a forward contract and a swap agreement. They further demonstrate that Century is both a forward contract merchant and a swap participant. Pursuant to sections 362(b)(6), 362(b)(17), 556 and 560 of the Bankruptcy Code, therefore, Century is entitled to a declaration that it is not stayed or limited in any way from exercising its Termination and Setoff Rights under the Noranda Contract. Century respectfully requests that this Court grant the Motion and enter summary judgment in Century's favor.

Dated: March 15, 2016

Respectfully submitted,

/s/ John Talbot Sant, Jr.
John Talbot Sant, Jr. (MO 35324)
Affinity Law Group, LLC
1610 Des Peres Road, Suite 100
St. Louis, MO 63131
Telephone: (314) 872-3333
Facsimile: (314) 872-3365
tsant@affinitylawgrp.com

-and-

Gregory M. Gordon (TX 08435300)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com

ATTORNEYS FOR PLAINTIFF